# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KYLE LAMAR PASCHAL-BARROS,<br>    Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:19cv1606(VLB) |
| | : | |
| CHRISTINE DOE,<br>    Defendant. | : | |
| | : | |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Kyle Lamar Paschal-Barros, is incarcerated at Northern Correctional Institution in Somers, Connecticut. He initiated this civil rights action by filing a complaint against Nurse Christine Doe asserting a claim of deliberate indifference to medical needs. Defendant Doe moves for summary judgment. For the reasons that follow, the motion is granted.

## I.    Standard of Review

When filing a motion for summary judgment, the moving party bears the burden of demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude

summary judgment."). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

If a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). Thus, the party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*

In reviewing the record, the Court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). The Court may not, however, "make credibility determinations or weigh the evidence. . . . [because] [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017) (internal quotation marks and citations omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, however, summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83

(2d Cir. 2004).

Where one party is proceeding *pro se*, the Court reads the *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, allegations unsupported by admissible evidence "do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

II. <u>Facts</u>[1]

On September 25, 2018, at MacDougall-Walker Correctional Institution, the plaintiff covered the window in his cell in Unit B and refused to comply with the orders of custody staff members to remove the window covering. Def's. L.R. 56(a)1 ¶¶ 1-2. Custody officials called Nurse Doe to the plaintiff's cell. *Id.* Upon

---

[1] The relevant facts are taken from Defendant's Local Rule 56(a)1 Statement ("Def's. L.R. 56(a)1"), [Doc. No. 19-2], and Exhibits B to I, [Doc. Nos. 19-4 to 19-7, 24-27], filed in support of the Local Rule 56(a)1 Statement; Plaintiff's Affidavit, [Doc. No. 30-3], and Exhibits, [Doc. Nos. 30-1 to 30-4] in support of the affidavit and memorandum in opposition to the motion for summary judgment. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the paragraphs set forth in the moving party's Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party in each paragraph. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. D. Conn. L. Civ. R. 56(a)2 and 56(a)3. Because the plaintiff has not filed a Local 56(a)2 Statement, the defendant's facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

her arrival, Nurse Doe observed that the window in the cell door was covered and the view into the cell was obstructed. *Id.* ¶ 2. An inmate's conduct in obstructing the view into his cell constitutes a Class A offense of interfering with safety or security under State of Connecticut Administrative Directive 9.5, Code of Penal Discipline. *Id.* ¶ 3.

Nurse Doe attempted to convince the plaintiff to remove the covering over the window. *Id.* ¶ 5. During Nurse Doe's conversation with the plaintiff, he stated that he suffered from asthma. *Id.* ¶ 6. Nurse Doe was unable to convince the plaintiff to remove the obstruction from his window. *Id.* ¶ 5. Nurse Doe remained near the plaintiff's cell as correctional staff members repeatedly directed the plaintiff to remove the window covering. *Id.* ¶ 7. The plaintiff refused to do so. *Id.*

At the time, State of Connecticut Department of Correction Administrative Directive 6.5 provided that prior to a planned use of physical force against an inmate by a correctional staff member involving the use of a chemical, a qualified health services staff member was required to review the inmate's health record to determine whether the inmate suffered from a medical condition that contraindicated the use of a chemical agent. *Id.* ¶ 9. Nurse Doe contacted the medical department at MacDougall-Walker to find out whether the plaintiff had been diagnosed with asthma, whether he was being treated for asthma and whether there was any other information in his medical record that precluded the deployment of a chemical agent at him. *Id.* ¶ 10. An advanced practice registered

4

nurse ("APRN") in the medical department reviewed the plaintiff's medical records[2] and informed Nurse Doe that the plaintiff had a history of asthma, but as of that date no medical staff member had prescribed medication to treat the condition and there were no current requests by the plaintiff to be treated for the condition. *Id.* ¶¶ 11-12. The APRN indicated that there was no information in the plaintiff's medical file that contraindicated the use of a chemical agent. *Id.* ¶ 13.

Nurse Doe relayed these facts to custody staff members and indicated that despite the plaintiff's claims that he suffered from asthma, there was no information in his medical file that contraindicated the use of a chemical agent at that time. *Id.* ¶ 15. A custody staff member then deployed a chemical agent into the plaintiff's cell. *Id.* ¶ 16. The plaintiff continued to argue and remained defiant and appeared to be unaffected by the chemical agent. *Id.* ¶ 17.

As a precautionary measure, Nurse Doe contacted the medical department again to confirm that there was no information in the plaintiff's medical file that contraindicated the use of a chemical agent. *Id.* ¶ 18. Despite receiving confirmation of this fact, Nurse Doe requested that an APRN order a one-time dose of albuterol and to have the dose of albuterol brought to the plaintiff's housing unit. *Id.*

Nurse Doe remained in the unit during the plaintiff's extraction from his cell by a cell extraction team. *Id.* ¶ 19. Because the plaintiff refused to walk and

---

[2] Although the plaintiff changed his name to Kyle Paschal-Barros, his medical records identify him as Deja Paschal, which is his birth name. *See* Doe Decl. ¶¶ 5-6, Doc. No. 19-4.

5

dropped his weight, custody staff members requested that someone in the medical department bring a wheelchair to the unit. *Id.* ¶ 20. After officers placed the plaintiff in the wheelchair, in an abundance of caution, Nurse Doe administered one dose of albuterol to the plaintiff. *Id.* ¶ 21. Nurse Doe observed no labored breathing or any other signs or symptoms that the plaintiff had suffered an asthma attack. *Id.* ¶ 22.

The plaintiff screamed repeatedly as officers wheeled him out of his housing unit and to a cell in the restrictive housing unit. *Id.* ¶¶ 24-25. Upon his arrival at the restrictive housing unit, Nurse Doe flushed the plaintiff's eyes with an eye wash. *Id.* ¶ 25. The plaintiff did not complain that he was having trouble breathing and Nurse Doe heard no sounds in his chest to suggest that he was suffering from a respiratory problem. *Id.* ¶ 26.

Later that day, Nurse Doe completed an Incident Report – Supplement in which she indicated that the plaintiff had informed her that he suffered from asthma, an APRN had checked his medical records and noted that he had a history of asthma and that she had administered a dose of albuterol to the plaintiff after he was sprayed with a chemical agent. *Id.* ¶¶ 27-28. Nurse Doe also completed a Medical Incident Report in connection with the plaintiff's placement on in-cell restraints. *Id.* ¶ 29. In that report, Nurse Doe documented her assessment and treatment of the small, superficial abrasion to the plaintiff's forehead as well as the fact that she had flushed the plaintiff's eyes with eye wash and had checked his restraints. *Id.*; Ex. D, Doc. No. 25. In reviewing the

Medical Incident Report in connection with this lawsuit, Nurse Doe became aware that she had inadvertently checked the box on the form indicating that prior to the use of a chemical agent, the plaintiff's medical records indicated contraindications to the use of a chemical agent. Def's. L.R. 56(a)1 ¶¶ 30-31.

In April 2018, the State of Connecticut Department of Correction converted the plaintiff's medical records to electronic records. *Id.* ¶ 34. On September 25, 2018, Nurse Doe entered a notation in the plaintiff's electronic medical records regarding the treatment that she had provided to him that day. *Id.* ¶ 40. On September 26, 2018, medical staff members assessed the plaintiff at three different times. *Id.* ¶ 42. There are no notations that the plaintiff complained of difficulty breathing on September 26, 2018. *Id.* ¶ 43.

On October 4, 2018, Nurse Doe completed another Incident Report – Supplement pertaining to her involvement in the September 25, 2018 incident during which the plaintiff covered the window in his cell door. *Id.* ¶ 38. In that report, Nurse Doe noted that on September 25, 2018 she observed that the plaintiff had covered the window in his cell door, she attempted to convince him to uncover the window and that the plaintiff was focused on asthma. *Id.*; Ex. F, Doc. No. 27.

Nurse Doe and Dr. Freston reviewed the plaintiff's electronic medical records covering the period from April 2018 to December 2018. *Id.* ¶¶ 32-33. Neither Nurse Doe, nor Dr. Freston observed any notations in the plaintiff's records regarding a medical condition that would contraindicate the use of

7

chemical agent on the plaintiff. *Id.*

III. Discussion

Defendant Doe asserts three arguments in support of her motion for summary judgment. She argues that the plaintiff's medical records reflect that he did not suffer from a serious medical condition at the time that a correctional officer dispersed a chemical agent into his cell; she was not deliberately indifferent to a substantial risk of harm to the plaintiff's health; and she is entitled to qualified immunity.

A. Deliberate Indifference to Serious Medical Need

In *Estelle v Gamble*, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment prohibits "deliberate indifference to an inmate's serious medical needs." *Id.* at 104. Deliberate indifference may not only be "manifested by prison doctors in their response to the prisoner's needs" but also "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.

To state an Eighth Amendment deliberate indifference claim, an inmate must meet two elements. The first element requires the inmate to allege facts that demonstrate that his medical need or condition is objectively serious. *See Hill v. Curcione*, 657 F.3d 116, 122–23 (2d Cir. 2011) (a serious medical need contemplates "a condition of urgency" such as "one that may produce death, degeneration, or extreme pain") (internal quotation marks and citation omitted). In determining the seriousness of a condition, the Court considers whether "a

reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

To meet the second element of an Eighth Amendment deliberate indifference claim involving a medical condition, an inmate must allege that the official acted with the requisite *mens rea,* that is, that the prison official or medical provider was actually aware that his actions or inactions would create a substantial risk of serious harm to the inmate. *See Hill*, 657 F.3d at 122 (citation omitted). Mere negligent conduct, however, does not constitute deliberate indifference. *Id.* at 123 ("'a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'") (quoting *Estelle*, 429 U.S. at 106). Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).

1. <u>Objective Component</u>

The parties do not dispute that when an officer dispersed a chemical agent into the plaintiff's cell on September 25, 2018, the plaintiff had a history of asthma. In his affidavit, the plaintiff avers that he has suffered from asthma since early childhood. Paschal-Barros Aff. ¶ 3, Doc. No. 30-3. The plaintiff has submitted copies of his medical records reflecting that from March 7, 2013 until March 6, 2017, various medical providers prescribed him a Ventolin inhaler to be

9

kept on his person and to be used as needed to treat his symptoms of asthma. Exs., Doc. No. 30-2, at 9-14. The prescriptions were to be re-filled only on request. *Id.* In addition, the plaintiff has submitted records indicating that he was seen by medical providers in the Chronic Disease Clinic for asthma sporadically on July 14, 2014, on January 20, 2016, on June 16, 2016, and on March 6, 2017. *Id.* at 1-3, 6. Plaintiff's asthma was not severe. *Id.* At each examination, plaintiff's asthma was described as stable and under good control. *Id.*

Because the severity of an asthma condition may vary, courts within the Second Circuit have concluded that the fact that an inmate may suffer from asthma, without more, does not constitute a serious medical need. *See, e.g., Huggins v. Schriro*, No. 14-CV-6468(GBD)(JLC), 2015 WL 7345750, at *7 (S.D.N.Y. Nov. 19, 2015) ("'[b]eing an asthmatic (a person susceptible to asthma attacks) is not a condition, in Eighth Amendment parlance, that is severe or "sufficiently serious"' to underlie a constitutional violation") (quoting *Patterson v. Lilley*, No. 02-CV-6056(NRB), 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003)), *report and recommendation adopted*, 2016 WL 680822 (S.D.N.Y. Feb. 18, 2016); *Youngblood v. Artus*, No. 10-CV-752(MAD)(DRH), 2011 WL 6337774, at *7 (N.D.N.Y. Dec. 19, 2011) ("Plaintiff's asthma condition itself does not qualify as a serious medical need for the purposes of a section 1983 claim."); *but see Lewis v. Clarkstown Police Dep't*, No. 11-cv-2487(ER), 2014 WL 1364934, at *6 (S.D.N.Y. Mar. 31, 2014) (finding that dispute as to whether plaintiff was experiencing an

asthma attack when the chemical agent was deployed precluded summary judgment).

Defendants have submitted over 400 pages of plaintiff's medical records covering the period from April 2018 to December 2018. Def's. L.R. 56(a)1, Ex. E, Doc. No. 26. There are no entries indicating that the plaintiff sought a renewal or refill of the prescription for a Ventolin inhaler that had expired on March 6, 2018 or that a physician or nurse prescribed an inhaler for the plaintiff during the period from April through September 2018 or noted that a chemical agent could not be used on the plaintiff due to a respiratory condition. Nor are there entries reflecting that the plaintiff sought treatment for asthma symptoms or an asthma attack during this period.

The plaintiff has submitted no evidence that he had been treated in the Chronic Disease Clinic after March 6, 2017 or that he was using an inhaler that had been prescribed to him as of September 25, 2018. Nor does he allege or provide evidence that he was suffering from an asthma attack on September 25, 2018. Nurse Doe declares that the plaintiff did not appear to be in respiratory distress after a custody staff member sprayed him with a chemical agent on September 25, 2018 but that she administered a puff of an albuterol inhaler to the plaintiff, in an abundance of caution. Def's. L.R. 56(a)1, Ex. B, Doe Decl. ¶ 23, Doc. No. 19-4. The plaintiff exhibited no signs of difficulty breathing or symptoms of an asthma attack and did not seek treatment for respiratory distress later that

day or during the next several days. *Id.* ¶¶ 24-25, 28; Ex. E at 112-27, 400-02, Doc. No. 26.

The defendant has met her burden of demonstrating the absence of a genuine dispute as to any material fact pertaining to the non-severe nature of the plaintiff's prior history of asthma as of September 25, 2018 when she informed an officer that there were no contraindications to the deployment of a chemical agent into the plaintiff's cell. The plaintiff has offered no evidence from which a reasonable jury could infer that he suffered from a serious medical need or respiratory condition on September 25, 2018. Thus, the plaintiff has not met the objective component of the Eighth Amendment deliberate indifference standard.

### 2. Subjective Component

Nurse Doe argues that even if the plaintiff suffered from a serious respiratory condition on September 25, 2018, she was not deliberately indifferent to substantial risk of harm to his health. Prior to advising correctional staff members regarding any contradictions in the plaintiff's medical records prohibiting the use of a chemical agent, Nurse Doe checked with an APRN in the medical unit regarding the plaintiff's statements that he suffered from asthma and confirmed that although he did have a history of asthma he was not being treated for the condition and had not been prescribed medication for the condition at that time. Def's. L.R. 56(a)1, Ex. B, Doe Decl. ¶¶ 10-12. At that time, the plaintiff's medical records included no information to suggest that the use of a chemical agent on him was contraindicated. *Id.* ¶ 13. APRN Doe relayed this information

12

to the custody staff members outside the plaintiff's cell. *Id.* ¶ 15. After an officer dispersed a chemical agent into the plaintiff's cell, Nurse Doe, in an abundance of caution requested that an APRN prescribe a dose of albuterol to have on hand as the plaintiff was extracted from his cell. *Id.* ¶¶ 17-18.

After the plaintiff's extraction, as a precautionary measure and to reduce the plaintiff's agitation caused by the use of the chemical agent, Nurse Doe administered one puff of the albuterol inhaler to the plaintiff. *Id.* ¶ 21; Ex. E, ECF No. 26, at 127. Nurse Doe then washed the plaintiff's eyes with eye wash and assessed him for injuries and any respiratory distress. *Id.* ¶¶ 24-25, 31. She observed no signs or symptoms of respiratory distress or an asthma attack. *Id.* ¶¶ 23-25, 27. The plaintiff has submitted no evidence to contradict the declaration of Nurse Doe.

In the absence of any evidence that the plaintiff's prior history of asthma constituted a severe medical condition and any notations in his medical file precluding the use of a chemical agent, the allegations regarding the conduct of Nurse Doe do not evince a conscious disregard of a substantial risk of harm to the plaintiff's physical health. *See, e.g.*, *Davis v. Thomas*, 558 F. App'x 150, 155 (3d Cir. 2014) (where medical evidence showed that inmate's asthma was not so severe that he could never be near use of pepper spray, inmate's personal opinion to the contrary was insufficient to defeat summary judgment); *Schultz v. Houle*, No. 16-Cv-11774-PBS, 2018 WL 1188753, at *2 (D. Mass. Mar. 5, 2018) (medical director reviewed inmate's file and found no contraindications to use of

13

chemical agent but recommended a certain type of chemical agent as inmate suffered from asthma); *Howard v. Phipps*, No. 7:12CV00079, 2013 WL 5308251, at *8 (W.D. Va. Sept. 20, 2013) (director of nursing stated that "from a medical perspective, having chronic asthma was not a contraindication for the use of pepper spray"). Accordingly, the defendant has demonstrated an absence of a genuine dispute as to any material fact pertaining to the subjective prong of the Eighth Amendment standard. The motion for summary judgment is granted on the ground that Nurse Doe was not deliberately indifferent to a serious medical condition or a serious risk of harm to the plaintiff's health.

B.  <u>Qualified Immunity</u>

Nurse Doe argues that she is entitled to qualified immunity. Because the Court has concluded that the plaintiff has failed to offer evidence to support a claim that Nurse Doe violated his Eighth Amendment rights when she informed custody officers that the use of a chemical agent to subdue him was not contraindicated by any medical condition that he suffered from at the time, it is unnecessary to reach the issue of qualified immunity. *See Demoret v. Zegarelli,* 451 F.3d 140, 148 (2d Cir. 2006) ("If no constitutional or statutory right was violated—construing the facts in favor of plaintiffs—we need not conduct further inquiries concerning qualified immunity.").

IV. **Conclusion**

The Defendant's Motion for Summary Judgment, [Doc. No. 19], is GRANTED. The Clerk is directed to enter judgment for Defendant Christine Doe and to close the case.

SO ORDERED at Hartford, Connecticut this 1st day of June, 2021.

                                       __/s/_____
                                       **Vanessa L. Bryant**
                                       **United States District Judge**